## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| JACOB R ELLIOTT, JOHN E SHANNON, JR, JOSHUA T LEGGETT, DONALD W BOXX, and BENJAMIN MILLER, )<br><br>Plaintiffs, )<br><br>v. )<br><br>ILLINOIS CENTRAL RAILROAD COMPANY, )<br><br>Defendant, )<br><br>v. )<br><br>MEMPHIS LIGHT GAS & WATER, )<br><br>Third-Party Defendant. ) | No. 2:19-cv-02807-TLP-cgc<br><br>JURY DEMAND |

## ORDER GRANTING IN PART AND DENYING IN PART
## MLGW'S MOTION TO DISMISS

Plaintiffs sued Defendant Illinois Central Railroad Company ("ICR") in state court alleging negligence.  (*See* ECF No. 1-1.)  ICR then removed the case to federal court.  (ECF No. 3.)  Once here, it filed a third-party complaint against Third-Party Defendant Memphis Light Gas & Water ("MLGW") seeking declaratory relief, indemnity and damages.  (ECF No. 47.)

MLGW now moves to dismiss ICR's third-party complaint under Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 68.)  ICR has responded. (ECF No. 73.)  MLGW replied.  (ECF No. 74.)  And ICR then filed a sur-reply.  (ECF No. 77.)   So the parties have fully briefed this motion.  And the Court held a hearing during which the parties argued their positions.  (*See* ECF No. 85.)

For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** MLGW's motion to dismiss.

## BACKGROUND

Plaintiffs, who were MLGW employees at the time of the incident here, received an assignment to replace a utility pole located on ICR's railroad right-of-way near Sullivan Road in Shelby County, Tennessee.  (ECF No. 1-1 at PageID 4.)

To do that, Plaintiffs set up their work truck close to ICR's active railroad tracks.  (*Id*. at PageID 5.)  When they realized one of ICR's trains was fast approaching their work area, Plaintiffs claim to have injured themselves while trying to get out of the train's way.  (*Id*. at PageID 5–6.)

As a result of this incident, Plaintiffs sued ICR in state court alleging negligence.  (*See id*. at PageID 6–7.)  Plaintiffs claimed that ICR's alleged negligence caused them to "suffer physical injuries, post-traumatic stress, loss of earning capacity, and other losses and damages." (*See id.* at PageID 7.)

ICR then removed the case to federal court, invoking diversity jurisdiction under 28 U.S.C. § 1332.  (ECF No. 3.)

Once here, it asserted a third-party complaint against MLGW for declaratory relief, indemnity and damages.  (ECF No. 47.)  According to ICR, its claims arise from a contract, the Uniform Electric Right-of-Way Agreement ("Agreement"), that both parties entered into in 1940.  (*Id*. at 254; *see* ECF No. 47-2 at PageID 267.)

At issue are two provisions of that Agreement:  Paragraph 4 and Paragraph 7.  (ECF No. 47-2 at PageID 269, 270).  In Paragraph 4 the parties agreed:

> [MLGW] covenants and agrees to indemnify and save harmless [ICR] from any
> loss, costs, damage or expense, including attorneys' fees, which it may incur or

> suffer, as well as any liability or claims for damages for death of or injury to persons, or for damage to property, proximately caused by any negligence of [MLGW] in the installation, erection, maintenance or use of its electrical lines and facilities, including any and all fixtures and equipment appurtenant thereto.

(*Id.* at PageID 269.)  And in Paragraph 7 they agreed that "[a]ll rights and powers of MLGW shall be exercised by it in a reasonable and proper manner[.]"  (*Id*. at PageID 270.)

Based on Paragraphs 4 and 7, ICR has asserted four claims against MLGW:  (1) declaratory relief; (2) contractual indemnity under Paragraph 4; (3) breach of contract; and (4) implied indemnity under Paragraph 7.  (ECF No. 47 at PageID 256–57.)

In response, MLGW now moves to dismiss ICR's third-party complaint under Rule 12(b)(6).  (ECF No. 68.)  The Court will now turn to its analysis of that motion.

## LEGAL STANDARD

The Court begins its analysis by addressing the rules governing motions to dismiss.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether a plaintiff's allegations state a claim for relief.  Under Rule 12(b)(6), the Court has to "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."  *DIRECTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

That said, a court may reject legal conclusions or unwarranted factual inferences.  *Hananiya v. City of Memphis*, 252 F. Supp. 2d 607, 610 (W.D. Tenn. 2003) (citing *Lewis v. ACB Business Servs., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998)).  The Sixth Circuit has noted "[a] complaint should only be dismissed if it is clear to the court that 'no relief could be granted under any set of facts that could be proved consistent with the allegations.'"  *Id.* (quoting *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003)).

The Court should also consider the allegations in Plaintiff's complaint under Federal Rule of Civil Procedure 8. Under Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard does not require "detailed factual allegations," but it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012).

To survive a motion to dismiss, Plaintiff must allege facts that are enough "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. 544, at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. 662, at 678.

## ANALYSIS

MLGW argues that ICR has failed to state a claim under Federal Rule of Civil Procedure for six reasons. First, "Plaintiffs have not stated, and cannot state, a claim for which MLGW could be liable." (ECF No. 68-1 at PageID 453.) Second, Plaintiff's original complaint "states no claim against [ICR] that could give rise to indemnity." (*Id.*) Third, ICR "cannot escape MLGW's immunity from tort liability by dressing negligence claims as different causes of action." (*Id.* at PageID 455.) Fourth, ICR's "declaratory judgment claims are barred by the statute of limitations." (*Id.* at PageID 458.) Fifth, ICR's "declaratory judgment and indemnity claims are improper, as they rely on a broader interpretation of the Agreement than the language of Paragraph 4 would support." (*Id.* at PageID 459.) And sixth, if ICR seeks "indemnity for

personal injuries asserted by MLGW employees, such indemnity cannot be sustained under a theory of implied indemnity."  (*Id.* at PageID 461.)

The Court will address each argument in turn.

## I.     Whether Plaintiffs' Original Complaint States Grounds for Which MLGW Is Liable to ICR Is Irrelevant

MLGW first argues that Plaintiffs' original complaint asserts no wrongdoing on the part of MLGW.  (ECF No. 68-1 at PageID 453.)  And even if Plaintiffs had done so, "the statute of limitations for such claims has expired."  (*Id.*) (citing T.C.A. § 50–6–108).[1]  So, according to MLGW, the Court should dismiss ICR's claims against it on these bases.  (*Id.*)

ICR responds that, even if Plaintiffs have alleged no wrongdoing on the part of MLGW, "that fact has no relevance to [ICR's] claims against MLGW and does not support MLGW's motion."  (ECF No. 73 at PageID 474.)  According to ICR, "its indemnity rights under the Agreement are not dependent on the plaintiffs' ability or decision to assert claims against MLGW; it is based solely on whether [ICR] experiences a loss because of MLGW's negligence."  (*Id.* at PageID 474–75.)

The Court agrees with ICR.  For the reasons below, the Court **DENIES** MLGW's motion to dismiss as to its arguments that ICR has improperly impleaded MLGW, and that ICR's claims are time-barred by Tennessee's workers' compensation statute's limitation period.

---

[1] The Court notes that MLGW's citation to T.C.A. § 50-6-108, as it relates to Tennessee's workers' compensation statute's limitation period, is incorrect.  Another provision, § 50-6-203, governs the limitation period of workers' compensation claims.  § 50-6-203(b)(1) ("In instances when the employer has not paid workers' compensation benefits to or on behalf of the employee, the right to compensation under this chapter shall be forever barred, unless the notice required by § 50-6-201 is given to the employer and a petition for benefit determination is filed with the bureau on a form prescribed by the administrator within one (1) year after the accident resulting in injury.").

For starters, Federal Rule of Civil Procedure 14 states that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is *or may be liable to it for all or part of the claim against it*." Fed. R. Civ. P. 14(a)(1) (emphasis added).  "Underlying Rule 14 is a desire 'to promote economy by avoiding the situation where a defendant has been adjudicated liable and then must bring a totally new action against a third party who may be liable to him for all or part of the original plaintiff's claim against him.'"  *Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008) (quotation omitted).  Ultimately, "[t]he third-party complaint is in the nature of an indemnity or contribution claim.  Accordingly, it is rare that a court renders judgment in favor of the defendant or dismisses the underlying action but nonetheless chooses to address a third-party claim."  *Id.*

ICR is trying to assign fault on MLGW for the incidents underlying Plaintiff's complaint. (ECF No. 73 at PageID 475; *see also* ECF No. 47.)

For instance, it claims that MLGW "knew and should have known that it had no right to access [ICR's] property or allow its employees to work near [ICR's] active railroad track unless and until authorized by a qualified flagman and, only then, under the instruction and direction of the flagman."  (ECF No. 47 at PageID 255.)  It also claims that MLGW "negligently directed or allowed its employees to enter onto [ICR's] property, where the employees negligently parked a bucket truck too close to [ICR's] active railroad tracks without waiting for a flagman, causing the truck to be struck by a passing train."  (*Id.*)

Under these allegations, the Court finds that ICR is "attempting to transfer the liability asserted against [it] by the original plaintiff[s]" to MLGW "*the* essential criterion of a third-party claim."  *Cooper Tire & Rubber Co.*, 512 F.3d at 805 (emphasis added).

What is more, when MLGW argues that the limitations period under Tennessee's workers' compensation statute bars ICR's third-party complaint, that argument has no legal support.  (*See* ECF No. 68-1 at PageID 453.)

ICR, "as a third-party plaintiff, may implead someone whom plaintiff could not sue directly . . .  The running of the statute of limitations on any claim that plaintiff might have against a third-party defendant also should have no effect on defendant's right to implead."  6 Wright, Miller, & Kane, *Fed. Prac. & Proc. Civ.* § 1447 (3d ed. 2008); *see also Parks v. United States*, 784 F.2d 20, 24 (1st Cir. 1986) ("It is well established that a defendant may, as third-party plaintiff, implead a party that the plaintiff could not sue directly, the claim against the third-party defendant inuring to the benefit of the third-party plaintiff and not to the original plaintiff.); *Shouey ex rel. Litz v. Duck Head Apparel Co.*, 49 F. Supp. 2d 413, 423 (M.D. Pa. 1999) ("[A] claim [for indemnity, contribution, or reimbursement] does not accrue for purposes of a statute of limitations until the third party plaintiff becomes obligated, either by judgment or by settlement, to pay the original plaintiff."); *E. Mississippi Elec. Power Ass'n v. Porcelain Prod. Co. (Inc.)*, 757 F. Supp. 748, 756 (S.D. Miss. 1990) (collecting cases for the proposition that "a cause of action for indemnity does not accrue until the loss or damage actually occurs, and that loss or damage does not occur until such time as the indemnitee's liability to the injured party has been determined."); *Tsz Ki Yim v. Home Indem. Co.*, 95 F.R.D. 349 (D.D.C. 1982) (citing *Keleket X-Ray Corp. v. United States*, 275 F.2d 167, 169 (D.C. Cir. 1960) (finding that a party can maintain a third-party complaint for indemnification, even if statute of limitations had run precluding the plaintiff from suing the third-party defendants).

The logic behind this rule is straightforward:  A "third-party defendant's liability to the defendant may be based on an entirely different theory than the defendant's liability to

the plaintiff." *Turner v. Aldor Co. of Nashville*, 827 S.W.2d 318, 320 (Tenn. Ct. App. 1991). So the statute of limitations governing one theory will not necessarily govern the other.

Plaintiffs' cause of action against ICR here is unlike ICR's cause of action against MLGW. The former is for negligence; the latter is for indemnity and breach of contract. For these reasons, the statute of limitations governing Plaintiff's cause of action against ICR does not control ICR's claim against MLGW because ICR has not sued MLGW for negligence and because there is no employment relationship between MLGW and ICR. *See* T.C.A. § 50-6-203(b)(1) ("In instances when the *employer* has not paid workers' compensation benefits to or on behalf of the *employee*, the right to compensation under this chapter shall be forever barred, unless the notice required by § 50-6-201 is given to the employer and a petition for benefit determination is filed with the bureau on a form prescribed by the administrator within one (1) year after the accident resulting in injury.") (emphasis added).

The Court thus **DENIES** MLGW's motion to dismiss as to its claims that ICR has improperly impleaded MLGW, and that ICR's claims are time-barred by Tennessee's workers' compensation statute's limitation period.

## II.     Plaintiffs Have Stated a Claim Under Which Indemnity Could Arise

MLGW argues that "Plaintiffs' original complaint states no claim against [ICR] that could give rise to indemnity." (ECF No. 68-1 at PageID 453.) To this effect, MLGW argues that, under Tennessee's comparative fault regime, ICR will be liable only for the proportion of damages caused by its own negligence. (*Id.* at PageID 454.) MLGW thus asserts that "[s]ince there are no circumstances under which [ICR] could be liable to Plaintiffs for damages caused by MLGW, there is nothing to indemnify." (*Id.*)

In response, ICR argues that it could be subject to disproportionate liability here given Tennessee's workers' compensation statute.  (ECF No. 73 at PageID 478–79.)  ICR claims, in essence, that Paragraph 4 prevents the allocation of such disproportionate liability in two ways: "*[I]n addition to* providing indemnity to [ICR] for any liability or claim brought by [Plaintiffs], Paragraph 4 specifically extends indemnity to [ICR] for all losses, expenses, and damages suffered by [ICR] as a result of MLGW's negligence regardless of whether such loss is asserted as part of a personal injury claim . . . ."  (*Id.* at PageID 477) (emphasis added.)

The Court finds that, although the issue here is complex, ICR's position has merit. MLGW's argument does nt persuade the Court that Plaintiffs have not stated a claim under which indemnity could arise.  That said, and to be clear, under Tennessee's worker's compensation statute and Tennessee Supreme Court cases applying that statute in comparative negligence cases, ICR cannot claim indemnity from MLGW for injuries suffered by Plaintiffs. Tennessee law bars that claim.  ICR has, however, stated other claims for indemnity here.

### A.       The Agreement and the Emergence of Comparative Fault

ICR signed the Agreement with MLGW in 1940, a time when contributory negligence principles governed tort cases.  (ECF No. 47 at PageID 267.)

Since then, a sea change has occurred in Tennessee tort law.  In 1992, the Tennessee Supreme Court in *McIntyre v. Balentine*, 833 S.W.2d 52, 56 (Tenn. 1992), abolished the doctrine of contributory negligence and adopted comparative fault principles.

MLGW is thus correct in emphasizing that comparative fault principles apply to Plaintiffs' claims here.  (ECF No. 68-1 at PageID 454.)  Under the comparative fault regime, "a particular defendant will . . . be liable only for the percentage of a plaintiff's damages occasioned by that defendant's negligence, [so] situations where a defendant has paid more than

his 'share' of a judgment will no longer arise[.]" *McIntyre*, 833 S.W.2d at 58.  In *McIntyre*, the

Tennessee Supreme Court recognized that its opinion would affect many tort principles, but it

chose to "harmoniz[e] [those] principles with comparative fault . . . another day." *Id.* at 56–57.

### B. The Interaction Between Tennessee's Workers' Compensation Statute and Comparative Fault

Although comparative fault principles apply, the Court notes that an important factual

wrinkle exists here—MLGW is Plaintiffs' employer.

This fact matters because, under Tennessee law, when employees suffer work-related

injuries, their employer is immune from tort liability under T.C.A. § 50-6-108(a),[2] known as the

exclusive remedy provision of Tennessee's workers' compensation statute.  MLGW's immunity

here thus raises "thorny problems created by the interplay between the tort system's doctrine of

comparative fault and the workers' compensation system's doctrine of no-fault recovery."

*Troup v. Fischer Steel Corp.*, 236 S.W.3d 143, 146 (Tenn. 2007).

Since *McIntyre*, the Tennessee Supreme Court has addressed this interplay in a trio of

seminal cases.

First, in *Ridings v. Ralph M. Parsons Co.*, 914 S.W.2d 79 (Tenn. 1996), the Tennessee

Supreme Court decided whether, under the workers' compensation statute, a defendant who is

not the plaintiff's employer may assert that the plaintiff's employer caused the plaintiff's

injuries in a personal injury case.

The Tennessee Supreme Court answered that question by holding that the workers'

compensation statute forbids tort liability from being imposed upon employers because "duty of

care and proximate cause are not found in the employer–employee relationship." *Id.* at 80.

---

[2] That provision says that "[t]he rights and remedies granted to an employee subject to this chapter . . . shall exclude all other rights and remedies of the employee[.]"  T.C.A. § 50-6-108(a).

Thus, under that logic, an employer's acts cannot be the proximate cause of their employees' injuries. *Id.*

Second, in *Snyder v. LTG Lufttechnische GmbH*, 955 S.W.2d 252 (Tenn. 1997), the Tennessee Supreme Court decided whether a fact-finder could apportion fault to a plaintiff's employer who is immune under the workers' compensation statute. The Tennessee Supreme Court reaffirmed *Ridings* and explained that, in enacting the workers' compensation statute, the legislature had determined that employers cannot be the proximate cause of their employee's injuries. *Id.* at 256.

That said, the court specified that the trier of fact can hear evidence about the employer's actions and even find that an employer is the cause in fact of its employee's injuries. *Id.* Otherwise, "[e]xcising the employer from that discussion would . . . make discussion of the case to be tried difficult, if not impossible." *Id.* Thus, the court concluded that a defendant may introduce relevant evidence at trial that a plaintiff's employer was the cause in fact of the plaintiff's injuries, but the jury may not assign fault to that employer through a finding of proximate cause. *Id.* at 257. In fact, "[t]he jury should be instructed that it may consider the actions of the employer only in assessing whether the plaintiff has met his burden of establishing the elements necessary to recover against defendants."[3] *Id.*

Finally, in *Carroll v. Whitney*, 29 S.W.3d 14 (Tenn. 2000), the Tennessee Supreme Court decided whether resident doctors immune from tort liability could appear as absent tortfeasors on a jury form. The Tennessee Supreme Court explained that keeping immune parties off of the jury form would exclude evidence of an immune nonparty's conduct and "blindfold the jury to

---

[3] The court also specifies that the trial judge should explain to the jury that the employer's liability has been or will be determined in another forum.

relevant evidence." *Id.* at 19. Accordingly, the court refined *Ridings* and *Snyder*, holding that juries may apportion fault to immune nonparties. *Id.* Importantly, however, the Tennessee Supreme Court refused to overrule *Ridings* and *Snyder*, reasoning that those cases are "uniquely applicable . . . to the allocation of fault to employers in workers' compensation cases." *Id.*

The Tennessee Supreme Court thus made clear that a trier of fact may not allocate fault to immune employers because of the exclusive remedy provision of the workers' compensation statute. *Id.*

### C. The Indemnity Agreement Covers More Than Plaintiff's Injuries

#### 1. ICR Cannot Recover Indemnity for Injuries Suffered by Plaintiffs

Here, as the Court has already emphasized, MLGW is Plaintiffs' employer. So under Tennessee's workers' compensation statute and the principles set forth by the Tennessee Supreme Court above, MLGW enjoys immunity from tort claims that Plaintiffs may have against it.

In this way, this Court can conceive of no possible way that MLGW will ever have to indemnify ICR for Plaintiffs' injuries proximately caused by MLGW's negligence. So MLGW is correct that "there is nothing to indemnify" with respect to ICR's potential liability for Plaintiff's claims. (ECF No. 68-1 at PageID 454.) ICR thus fails to state a claim for indemnification for any liability that may result from Plaintiff's negligence claim against it.

#### 2. But ICR Can Recover Indemnity for Other Losses That Are Covered by and Subject to Paragraph 4

That said, and to be clear, ICR's contractual indemnity claim is not limited to liability that ICR may incur as a result of Plaintiff's claim.

ICR *also* seeks indemnity under Paragraph 4 for "any loss, costs, damage or expense, including attorneys' fees, which it may incur or suffer . . . or for damage to property,

proximately caused by any negligence of [MLGW] . . . ."  (ECF No. 47 at PageID 255.)  As ICR asserts in its response, that claim for indemnity would arise "*regardless* of whether such loss is asserted as part of a personal injury claim against [ICR] or not."  (ECF No. 73 at PageID 477) (emphasis added.)

Indemnity under that portion of Paragraph 4 does not relate to Plaintiffs' tort claim against ICR.  For instance, if ICR could introduce evidence at trial that it incurred losses or expenses as a result of any property damages caused by MLGW's negligence, Paragraph 4 would entitle ICR to indemnity from MLGW for those amounts.  And that entitlement would not be barred by Tennessee law because it arises separately from Plaintiff's tort claim against ICR and thus lies outside the purview of the workers' compensation statute.

Thus, although Tennessee law forbids MLGW from indemnifying ICR for any liability that results from Plaintiffs' negligence claim against ICR, the Court finds less persuasive MLGW's argument that ICR's claims must be dismissed because Plaintiff's original complaint states *no* claim against ICR that could lead to indemnity.  Stated concisely, Paragraph 4 enables ICR to recover indemnity for losses beyond those that result from Plaintiffs' negligence claims.

The Court thus **DENIES** MLGW's motion to dismiss ICR's claims on this basis.

## III. The GTLA Does Not Bar ICR's Indemnity and Breach of Contract Claims

### A. The Parties' Positions

MLGW's third argument is that "each of the claims asserted in [ICR's] Complaint . . . are negligence claims."  (ECF No. 68-1 at PageID 455.)  Yet "[b]y framing their allegations as grounded in contract rather than tort, [ICR] seeks to skirt the strict requirements by Tennessee's Governmental Tort Liability Act ("GTLA") for maintaining suit against a municipal entity," :

the GTLA's one-year statute of limitations for tort claims brought against governmental entities. (*Id.*) (citing T.C.A. § 29-20-305(b)).

In response, ICR argues that's its causes of action "under the Agreement are contract claims, not tort claims, and they are not subject to the GTLA." (ECF No. 73 at PageID 479.) To this effect, ICR emphasizes that it "seeks contractual indemnity and implied indemnity, as well as damages for breach of contract," which "arise from mutually agreed upon, enforceable obligations between [ICR] and MLGW as set forth in the Agreement." (*Id.* at PageID 480.) Thus, according to ICR, it is simply "asking this Court to enforce the Agreement and, as such, its claims against MLGW are based in contract." (*Id.*)

The Court finds ICR's position well-taken. For the reasons below, the Court finds that ICR's claims sound in contract, rendering the GTLA's one-year statute of limitations inapplicable here.

### B.      Standard for Determining the Gravamen of ICR's Claims

"It is oft-recited law in [Tennessee] that to determine the governing statute of limitations, a court must ascertain the '"gravamen of the complaint."'" *Benz-Elliott v. Barrett Enterprises, LP*, 456 S.W.3d 140, 147 (Tenn. 2015) (internal quotations omitted). "[I]n choosing the applicable statute of limitations, courts must ascertain the gravamen of each claim, not the gravamen of the complaint in its entirety." *Id.* at 149 (citations omitted).

This Court will use a "two-step approach . . . when ascertaining the gravamen of a claim for the purpose of choosing the applicable statute of limitations." *Id.* at 151. It "must first consider the legal basis of the claim and then consider the type of injuries for which damages are sought." *Id.* "This analysis is necessarily fact-intensive and requires a careful examination

of the allegations of the complaint as to each claim for the types of injuries asserted and damages sought." *Id.*

### C.   Determining the Gravamen Here

#### 1.   Contractual Indemnity Claim Under Paragraph 4

##### a.   Legal Basis

As to ICR's contractual indemnity claim under Paragraph 4, the Court first finds that its basis is in contract, not in tort.

Under Tennessee law, "suits for fraud, deceit or conspiracy, whether they arise incident to a contract or not[,] are actions in tort and must be governed by the applicable tort statute of limitations." *Harvest Corp. v. Ernst & Whinney*, 610 S.W.2d 727, 729–30 (Tenn. Ct. App. 1980). By contrast, "[t]he gravamen of an action is in contract and not in tort '[w]hen an act complained of is a breach of specific terms of the contract, without any reference to the legal duties imposed by law upon the relationship created thereby.'" *Green v. Moore*, No. M2000-03035-COA-R3-CV, 2001 WL 1660828, at *3 (Tenn. Ct. App. Dec. 28, 2001) (internal quotation omitted).

Here, to begin with, ICR has not alleged "fraud, deceit or conspiracy" on the part of MLGW. *Harvest Corp.*, 610 S.W.2d at 729. Moreover, the basis of its claim stems from MLGW's obligation under the Agreement—specifically, Paragraph 4—to "indemnify and save harmless [ICR] from any loss, costs, damage or expense, including attorneys' fees, which it may incur or suffer . . . proximately caused by any negligence of [MLGW] . . . ." (ECF No. 47-2 at PageID 269.)

Although the parties here baked the tort concept of negligence into Paragraph 4, the essence of ICR's claim is to seek "reimbursement of damages [it] expects to pay to [Plaintiffs]

15

for damages suffered by [Plaintiffs] as a result of [MLGW's] defective performance of a contract with [IRC] . . . ." *Gause v. Cole*, No. 03A01-9707-CH-00001, 1997 WL 304117, at *4 (Tenn. Ct. App. June 5, 1997).  Thus, "the key issue that [ICR] must prove to establish [its contractual indemnity claim] is whether [MLGW] failed to act in accordance with prudent underwriting principles in breach of the Agreement."  *Fid. Nat. Title Ins. Co. v. Archer Land Title, LLC*, No. 3:07-cv-0213, 2007 WL 3231847, at *4 (M.D. Tenn. Oct. 30, 2007).

The Court thus finds that the basis under which ICR brings its contractual indemnity claim against MLGW is in contract because it derives from "specific terms of the" Agreement that both parties entered into.  *Green*, 2001 WL 1660828, at *3.

### b.        Types of Injuries

The Court next "consider[s] the type of injuries for which damages are sought" under Paragraph 4 of the Agreement.  *Benz-Elliott,* 456 S.W.3d at 151.

ICR is not technically seeking damages under Paragraph 4 here.  Rather, it is seeking "indemnity for its own damages proximately caused by [MLGW's] negligence" and "for the claims asserted against it by the Plaintiffs as well as any liability that may result from Plaintiffs' claims."  (ECF No. 4 at PageID 257.)

This distinction matters because ICR's hypothetical recovery under Paragraph 4 will never stem from MLGW's tortious conduct.  ICR's recovery will stem instead from liability that MLGW promised to assume under the Agreement.  In this way, the Court can comfortably find that ICR "does not seek any damages unique to . . . tort claims."  *Archer Land Title, LLC*, 2007 WL 3231847, at *4.  The type of recovery here is indemnity, not damages for tortious conduct on the part of MLGW.

For the reasons above, the Court thus finds that the gravamen of ICR's contractual indemnity claim under Paragraph 4 sounds in contract, not tort. [4]  Thus, the GTLA's one-year statute of limitations does not apply to ICR's contractual indemnity claim.

### 2.     Breach of Contract and Implied Indemnity Claims Under Paragraph 7

When MLGW argues that ICR's breach of contract and implied indemnity claims under Paragraph 7 are tort claims, that argument does not stand.

Starting with ICR's breach of contract claim, the Court finds that the basis there is contractual for the simple reason that it "rest[s] on the alleged breach of a specific contractual provision." *Alsbrook v. Concorde Career Colleges, Inc.*, No. 2:19-cv-02583, 2020 WL 3475107, at *6 (W.D. Tenn. June 25, 2020) (citing *Benz-Elliott*, 456 S.W.3d at 152).  Besides, ICR has alleged injuries—"property damage, losses and costs associated with train delays, attorneys' fees, and other damages to be proved at trial"—that stem directly from MLGW's violation of Paragraph 7.  (ECF No. 47 at PageID 257.)  These allegations are enough to find that the "type of injuries for which damages are sought" are contractual.  *Benz-Elliott,* 456 S.W.3d at 151.  Thus, the core of ICR's breach of contract claim is in contract, not tort.

---

[4] The Court notes that, even assuming the GTLA's one-year statute of limitations did apply here, that statute would not start running until Plaintiffs obtain a judgment against ICR.  The Sixth Circuit has explained that "a cause of action for indemnity arises when the party seeking indemnification first suffers the loss for which he claims indemnity, not when the underlying tort, upon which the indemnity claim is based, occurs."  *Olin Corp. v. Yeargin Inc.*, 146 F.3d 398, 406 (6th Cir. 1998) (citing *Kane v. Magna Mixer Co.*, 71 F.3d 555, 561 n. 1 (6th Cir. 1995), *cert. denied*, 517 U.S. 1220 (1996); *Security Fire Protection Co. v. City of Ripley*, 608 S.W.2d 874, 877 (Tenn. Ct. App.1980); *Stiver Marketing, Inc. v. Performance Bus. Forms, Inc.*, No. 01–A–019108CH00276, 1991 WL 254564, at *4 (Tenn. Ct. App. Dec. 4, 1991).  ICR has not yet "suffer[ed] the loss for which [it] claims indemnity."  *Olin Corp.*, 146 F.3d at 406.  Thus, on that basis alone, the Court could **DENY** MLGW's argument that the GTLA's one-year statute of limitations bars ICR's claim for contractual indemnity.

And as to ICR's implied indemnity claim under Paragraph 7, the Court finds that its reasoning as to ICR's contractual indemnity claim under Paragraph 4 applies equally well here.

The basis for ICR's implied indemnity claim is to seek "reimbursement of damages [it] expects to pay to [Plaintiffs] for damages suffered by [Plaintiffs] as a result of [MLGW's] defective performance of a contract with [IRC] . . . ."  *Gause*, 1997 WL 304117, at *4.  Under that finding, the basis is thus contractual.[5]  What is more, the type of recovery under this claim is indemnity, an inherently contractual remedy, as opposed to damages stemming from any tort on the part of MLGW.  *Gause v. Cole*, No. 03A01-9707-CH-00001, 1997 WL 304117, at *5 (Tenn. Ct. App. June 5, 1997) ("[A] right to indemnity exists whenever one party is exposed to liability by the action of another who . . . should make good the loss of the other.  The right of implied indemnity in contractual cases is based upon a breach of contract by the person against whom indemnity is sought[.]").  The core of ICR's implied indemnity claim under Paragraph 7 is thus in contract.

For the reasons above, therefore, the Court finds that the gravamen of ICR's breach of contract and implied indemnity claims under Paragraph 7 sound in contract, and that the GTLA's one-year statute of limitations does not apply here.  The Court thus **DENIES** MLGW's motion to dismiss as to its argument that ICR's indemnity and breach of contract claims are negligence claims, barred by T.C.A. § 29-20-305(b).

---

[5] For clarity, the Court should note that the basis of ICR's implied indemnity claim and the scope of relief available under that claim are two separate issues.  As the Court discusses more fully below, although ICR may claim it is entitled under Paragraph 7 to recover indemnity for damages that stem from MLGW's negligence toward its employee, that claim is barred by Tennessee's workers' compensation statute.  The issue here—whether the basis of Plaintiff's implied indemnity is contractual—is narrower.  And it in no way affects the Court's finding that ICR cannot seek indemnity for injuries suffered by MLGW's own employees.  Tennessee law bars any such claim.

## IV.   The GTLA's Statute of Limitations Does Not Bar ICR's Declaratory Judgment Claim

MLGW's fourth argument is that the GLTA's one-year statute of limitations bars ICR from asserting a declaratory judgment claim.  (ECF No. 68-1 at PageID 458.)  MLGW's logic is that, because "[t]he substantive claim under this request to relief—unambiguously—is negligence . . . , the [GTLA's] one-year statute of limitations would similarly apply to any requests for a declaration that MLGW was negligent."  (*Id.*)

In its response, ICR argues that, because the essence of its claims are in contract, the GTLA's one-year statute of limitations does not apply.  (ECF No. 73 at PageID 479.)

The Court agrees with ICR.  For the reasons below, the Court **DENIES** MLGW's motion to dismiss as to its argument that the GTLA's one-year statute of limitation bars ICR from asserting a claim for declaratory judgment.

The Sixth Circuit has made clear that "[a] request for declaratory relief is barred to the same extent that the claim for substantive relief on which it is based would be barred."  *Int'l Ass'n of Machinists & Aerospace Workers v. Tennessee Valley Auth.*, 108 F.3d 658, 668 (6th Cir. 1997).  "'Because a declaratory judgment action is a procedural device used to vindicate substantive rights, it is time-barred only if relief on a direct claim would also be barred.'"  *Id.* (quoting *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir. 1992), *cert. denied*, 508 U.S. 906 (1993)).  "A contrary rule would allow a plaintiff to 'mak[e] a mockery of the statute of limitations by the simple expedient of creative labelling.'"  *Id.* (quoting *Gilbert v. City of Cambridge*, 932 F.2d 51, 57 (1st Cir.), *cert. denied*, 502 U.S. 866 (1991)).

Here, the Court has already found that the GTLA's one-year statute of limitations does not bar ICR's claims for indemnity and breach of contract.  So for the same reasons that led to that result, the Court finds that the GTLA does not bar ICR's claim for declaratory relief.  *See*

*Tennessee Valley Auth.*, 108 F.3d at 668.  The Court thus **DENIES** MLGW's motion to dismiss as to its argument that the GTLA's one-year statute of limitation bars ICR from asserting a claim for declaratory judgment.

## V.     The Scope of ICR's Declaratory Judgment and Indemnity Claims

MLGW's fifth argument is that ICR's claims for indemnity and declaratory judgment "rely on a broader interpretation of the Agreement than the language of Paragraph 4 would support."  (ECF No. 68-1 at PageID 459.)

They provide three bases for that argument.  First, "[s]ince the Agreement only provides for indemnity with respect to damages proximately caused by MLGW's negligence, MLGW will have no obligation to indemnify [ICR] in the event that both parties share in the fault." (*Id.*)  Second, "[m]any of [ICR's] claims—in particular their allegations of MLGW's direct negligence—fall outside" the scope of Paragraph 4 requiring that MLGW indemnify ICR for issues that relate to "the installation, erection, maintenance or use of its electric lines and facilities" only.  (*Id.* at PageID 460; ECF No. 47-2 at PageID 269).  Third, "Paragraph 4 of the Agreement was intended to protect [ICR] from any losses, liability, or claims brought by third parties, rather than those of MLGW's employees or [ICR] itself."  (ECF No. 68 at PageID 460.)

The Court will address each of these claims in turn.

### A.     MLGW Can Indemnify ICR Even if ICR Is Partially at Fault

According to MLGW, ICR's request for a declaration that "the accident was caused in whole or in part by MLG&W's negligence" is improper because "Tennessee has adopted the 'near universal rule' that, unless the contract specifies otherwise, a party seeking indemnity is precluded from recovery when there was concurrent negligence among both parties."  (ECF No. 68-1 at PageID 459) (quoting ECF No. 47 at PageID 257; *Olin Corp. v. Yeargin Inc.*, 146 F.3d

398, 404 (6th Cir. 1998); *Farmers Mut. of Tennessee v. Athens Ins. Agency*, 145 S.W.3d 566, 569 (Tenn. Ct. App. 2004)). MLGW thus claims that, "[s]ince the Agreement only provides for indemnity with respect to damages proximately caused by MLGW's negligence, MLGW will have no obligation to indemnify [ICR] in the event that both parties share in the fault." (*Id.*)

In its response, ICR states that it "is not seeking indemnity for its own negligence. It seeks only indemnity for MLGW's negligence, and even under *Olin*, it is entitled to assert its claim for such indemnity." (ECF No. 73 at PageID 484) (citing *Olin Corp.*, 146 F.3d at 404–05).

The Court finds ICR's position well-taken. For the reasons below, the Court finds that MLGW can indemnify ICR even if ICR is partially at fault here.

To begin with, even though Tennessee adopted a comparative fault regime in *McIntyre*, "[t]here is no general prohibition against indemnification provisions in contracts" under Tennessee law. *Pitt v. Tyree Org. Ltd.*, 90 S.W.3d 244, 252 (Tenn. Ct. App. 2002); *see also Astec, Inc. v. Rouse Polymerics Int'l, Inc.*, No. 1:04-cv-282, 2007 WL 9729013, at *6 (E.D. Tenn. June 28, 2007), *aff'd*, 282 F. App'x 417 (6th Cir. 2008) ("Indemnity contracts are permitted in Tennessee."). The reason is that "[p]arties to a contract are free to allocate risks and burdens between themselves as they see fit." *Brown Bros. v. Metro. Gov't of Nashville & Davidson Cty.*, 877 S.W.2d 745, 749 (Tenn. Ct. App. 1993). MLGW is thus incorrect in stating that, "for the indemnity provision in Paragraph 4 of the Agreement to be invoked, it will be necessary for [ICR] to demonstrate *both* MLGW's negligence and [ICR's] own complete lack of fault." (ECF No. 68-1 at PageID 459) (emphasis added.) No Tennessee court has established such a sweeping rule.

That said, the law of indemnity in Tennessee far is less permissive when an indemnitee seeks to recover indemnity for its *own* negligence.  As the Sixth Circuit explained in *Olin Corp.*, although "Tennessee law permits a party to be contractually indemnified for its own negligence, . . . [']an indemnity agreement does not indemnify the indemnitee's own negligence *unless it is clear and unambiguous from the language of the contract that this was the intention of the parties*.'"  146 F.3d at 404 (quoting *Amerco Marketing Co. v. Myers*, 494 F.2d 904 (6th Cir. 1974) (emphasis added).  In other words, "Tennessee recognizes the 'near[ ] . . . universal rule that there can be no recovery where there was concurrent negligence of both indemnitor and indemnitee unless the indemnity contract provides for indemnification in such case by "clear and unequivocal terms."'"[6]  *Id.* (internal quotations omitted).

But, here, ICR does not argue it is entitled to indemnity for its own negligence.  (*See* ECF No. 73 at PageID 484) ("[ICR] is not seeking indemnity for its own negligence.")  It is only seeking to enforce MLGW's indemnity obligation under the Agreement, which, as the Court explained above, is permissible under Tennessee law.  (*See id.*)  So the Court **DENIES** MLGW's motion to dismiss insofar as it argues that MLGW cannot indemnify ICR if ICR is also partially at fault here.

### B. The Declaratory Relief Sought by ICR Plausibly Lies Within the Language of Paragraph 4

MLGW also argues that ICR's request for a declaration that MLGW was negligent is improper because it falls outside Paragraph 4, as that paragraph limits MLGW's indemnity to

---

[6] Based on this language in *Olin Corp.*, the Court finds that the "near universal rule" to which MLGW refers is not as broad as MLGW suggests.  (*See* ECF No. 68-1 at PageID 459.)  *Olin Corp.* limits the application of that rule to when an indemnitee seeks indemnity for its own negligence.  146 F.3d at 404.  But when an indemnitee is simply trying to enforce a contractual indemnity provision, as ICR is doing here, it is free to do so—even if it may be partially at fault in a particular case.

negligence "in the installation, erection, maintenance or use of its electric lines and facilities, including any and all fixtures and equipment appurtenant thereto."[7]  (ECF No. 68-1 at PageID 459–60) (quoting ECF No. 47-2 at PageID 269.)

ICR responds that "it is alleged by [Plaintiffs], and not disputed by MLGW that [Plaintiffs] were in the process of replacing a damaged power pole that was located near the railroad tracks—*i.e.,* they were installing, erected or maintaining the electrical lines and facilities."  (ECF No. 73 at PageID 485.)   It also claims that, if MLGW "failed to properly train plaintiffs on the proper procedures to perform this work, its negligence in failing to do so triggers its indemnity obligation under Paragraph 4."  (*Id.*)  ICR thus claims that its claim for declaratory judgment is proper.

At this point in the litigation, the Court finds ICR's position persuasive.  The Court thus **DENIES** MLGW's motion to dismiss as to its claim that ICR's declaratory judgment claim goes beyond the language of Paragraph 4.[8]  The Court need only point to the facts alleged here to justify this finding.

The day of the accident that prompted this lawsuit, "Plaintiffs were assigned by [MLGW] *to repair and replace a utility pole* located on Defendant's railroad right-of-way at or near Sullivan Road in Millington, Shelby County, Tennessee."  (ECF No. 1-1 at PageID 4) (emphasis added.)

---

[7] MLGW refers specifically to ICR's request for a declaration that MLGW breached its "duty to properly train, supervise, direct, and instruct its employees regarding the terms and conditions of the Agreement" and "its duty to adopt, enforce, educate, and train its employees regarding safety measures, procedures and rules relating to safely working on or around active railroad tracks." (ECF No. 68-1 at PageID 459) (citing ECF No. 47 at PageID 256.)

[8] At this juncture in the litigation, the Court assumes without deciding that ICR's claim for declaratory judgment is proper.

According to ICR, the damages and losses it has suffered from the accident are because of MLGW's negligence in how it directed its employees when they tried to repair and replace that utility pole. (ECF No. 47 at PageID 254.) To this effect, ICR has put forth these allegations in its third-party complaint:

> [ICR] removed the Lawsuit to this Court and filed a counter-claim against [Plaintiffs], on the grounds that they were trespassers at the time of the accident *and their wrongful conduct caused the accident, which resulted in [ICR] suffering damage* . . . . Plaintiffs have taken the position that, at the time of the accident, *they were within the course and scope of their employment with [MLGW] who directed and/or purported to authorize their entry onto [ICR's] property.* If [MLGW] authorized Plaintiffs to enter onto [ICR's] property, they were both governed by [the Agreement], which provides for a utility right of way for overhead power lines near the location where the accident occurred.

(ECF No. 47 at PageID 254.)

With these allegations, the Court thus finds that ICR's declaratory judgment claim falls within the language of Paragraph 4. *See DIRECTV, Inc.*, 487 F.3d at 476 (finding that a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.").

The reason is straightforward. ICR seeks a declaration that MLGW was negligent in how it directed and authorized Plaintiffs to repair and replace the utility pole here. This claim, in turn, relates to "the installation, erection, maintenance or use of [MLGW's] electric lines and facilities, including any and all fixtures and equipment appurtenant thereto." (ECF No. 47-2 at PageID 269.) The Court thus **DENIES** MLGW's motion to dismiss as to its claim that ICR's declaratory judgment claim goes beyond the language of Paragraph 4.

### C.   Paragraph 4 Does Not Allow Indemnity for Injuries Suffered by MLGW's Employees

Finally, MLGW argues that "Paragraph 4 of the Agreement was intended to protect [ICR] from any losses, liability, or claims brought by third parties, rather than those of MLGW's

employees or [ICR] itself."  (ECF No. 68-1 at PageID 460.)  According to MLGW, therefore, the word "persons" in Paragraph 4 does not cover MLGW's employees.  (*See* ECF No. 47-2 at PageID 269.)

In response, ICR claims that "[t]he plain meaning of 'persons' as used in Paragraph 4 certainly includes MLGW employees, and there is simply no basis for an argument otherwise." (ECF No. 73 at PageID 486.)  In this way, ICR argues that, "[i]f MLGW had wanted to exclude its employees (or any other 'person') from the definition of 'persons,' it could and should have included such exclusionary language."  (*Id.*)

For the reasons below, MLGW's position is more convincing.  The Court thus finds that, as applied in this case, the word "persons" does not cover MLGW's employees.

As this Court made clear above, the Tennessee Supreme Court in *Snyder* found that an "employer cannot be found to be the proximate, or legal, cause of the plaintiff's injuries because the employer is immune from tort liability under [T.C.A.] § 50–6–108(a)."  955 S.W.2d at 256. It explained that, "[b]y enacting [T.C.A.] § 50–6–108(a), the legislature has already determined that for policy reasons the employer may not be the legal cause of the plaintiff's injuries."  *Id.*

If the Court were to accept ICR's argument here—that the word "persons" encompasses MLGW's employees—the result would be that ICR could receive indemnity for liability stemming from injuries suffered by MLGW's employees "*proximately caused* by any negligence of [MLGW][.]")  (ECF No. 47-2 at PageID 269) (emphasis added.)   But that result conflicts with *Snyder* and the rest of workers' compensation jurisprudence in Tennessee that makes clear that an employer's negligence cannot be the proximate cause of their employees' injuries.  *See* T.C.A. § 50–6–108(a); *Ridings*, 914 S.W.2d at 83; *Carroll*, 29 S.W.3d at 27.

So in keeping with Tennessee law. the Court finds that the word "persons" does not include MLGW's employees.  *See* 41 Am. Jur. 2d Indemnity § 14A ("[C]ontract of indemnity must be strictly construed against the indemnitee to avoid reading into it a duty which the parties did not intend to be assumed.").

The Court thus **GRANTS** MLGW's motion to dismiss as to its claim that the word "persons" in Paragraph 4 does not cover MLGW's employees.

## VI.   Available Relief Under ICR's Implied Indemnity Claim

Finally, MLGW argues that, "[t]o the extent that [ICR] seeks to impose indemnity liability on MLGW for injuries suffered by MLGW's own employees, . . . such claims cannot be pursued under the theory of implied indemnity."  (ECF No. 68-1 at PageID 461.)  It claims that, "[u]nder the Tennessee Workers' Compensation Law, a third-party indemnity action for injuries suffered by the indemnifying party's employees is only permitted when the employer 'has *expressly* contracted to indemnify the third party.'"  (*Id.*) (quoting T.C.A. § 50-6-108) (emphasis added).  Thus, "any indemnity that is not expressly provided under the parties' Agreement is barred."  (*Id.*)

ICR responds that "Section 50-6-108 allows any contractual indemnity claims against immune employers."  (ECF No. 73 at PageID 486) (citing *Dawn v. Essex Conveyors, Inc.*, 498 F.2d 921, 925 (6th Cir. 1974)).  Thus, "[b]ecause [ICR's] implied indemnity claims are based on MLGW's breach of the Agreement, they are authorized under Section 50-6-108."  (*Id.* at PageID 486–87.)

The Court finds MLGW's position well-taken.  As the Court explained above, MLGW will never have to indemnify ICR for MLGW's negligence toward its employees.  T.C.A. § 50–

6–108(a).  That said, ICR is free to seek implied indemnity for injuries other than those arising from MLGW's negligence toward its employees.

In the first place, the Court notes that MLGW does not appear to dispute ICR's ability to state a claim for implied indemnity under Paragraph 7.

Nor could it.  The Sixth Circuit has made clear that, despite the immunity afforded to employers under T.C.A. § 50-6-108 in employee–employer lawsuits, third-party entities like ICR are free to pursue actions against immune employers like MLGW "for indemnity based upon express *or implied contract*."  *Dawn v. Essex Conveyors, Inc.*, 498 F.2d 921, 925 (6th Cir. 1974) (emphasis added).  In cases like the one here, "[w]hile a contract between parties may be silent as to indemnification, an obligation may be imposed where the party from whom indemnity is sought breached a contract . . . ."  *Time & Sec. Mgmt., Inc. v. Pittway Corp.*, 422 F. Supp. 2d 907, 914 (W.D. Tenn. 2006) (citing *Winter v. Smith*, 914 S.W.2d 527, 542 (Tenn. Ct. App. 1995)).

As a result, the dispute here appears to center on what monetary relief ICR could recover from MLGW, if a jury were to find that MLGW did, in fact, breach its obligation under Paragraph 7.

On this issue, the Court need only point to its analysis above, where it makes clear that ICR cannot recover indemnity from MLGW for MLGW's tortious conduct toward its employees.  *See Carroll v. Whitney*, 29 S.W.3d 14, 22 (Tenn. 2000) (holding that plaintiff-employees "must bear the burden of not collecting those damages" from immune defendant-employers); *see also* 17 Tenn. Prac. Tenn. Law of Comparative Fault § 5:13 (2018 ed.) ("[A]ny fault assigned to a governmental entity that, while not immune from suit, has limited financial

responsibility under the law, is also borne by the plaintiff to the extent that the fault percentage multiplied by the total damages exceeds that cap on governmental liability.").

The Court thus largely agrees with MLGW that ICR cannot "impose indemnity liability on MLGW for injuries suffered by MLGW's own employees."  (ECF No. 68-1 at PageID 461.) The only caveat is that the indemnity liability would have to stem from MLGW's *tortious* conduct toward its employees.  Otherwise, Tennessee's workers' compensation statute would have no applicability.  *See* T.C.A. § 50-6-108(a) ("The rights and remedies granted to an employee subject to this chapter, on account of personal injury or death by accident . . . , shall exclude all other rights and remedies of the employee . . . ."); *Ridings v. Ralph M. Parsons Co.*, 914 S.W.2d 79, 81 n.2  (Tenn. 1996) ("The exclusive remedy provision of the Workers' Compensation Act, [T.C.A.] § 50–6–108(a), eliminates any tort liability on the part of the employer.").

With that understanding, the Court **GRANTS** MLGW's motion to dismiss as to this issue.

## CONCLUSION

For the reasons above, the Court **GRANTS IN PART** and **DENIES IN PART** MLGW's motion to dismiss.

**SO ORDERED**, this 4th of August, 2020.

 s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE